**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Submitted August 31, 2005[*]
Decided September 1, 2005

**Before**

Hon. RICHARD D. CUDAHY, *Circuit Judge*

Hon. DANIEL A. MANION, *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

No. 04-2118

| | |
|---|---|
| AMADOU NOUMOU BAH,<br>    *Petitioner*,<br><br>    *v.*<br><br>ALBERTO GONZALES,<br>    *Respondent*. | Petition for Review of an Order of the<br>Board of Immigration Appeals<br><br>No. A95-378-223 |

**O R D E R**

Amadou Noumou Bah fled his home country, Guinea, using a false Zambian passport and applied for asylum five months after arriving in the United States, claiming that he had been persecuted for his involvement with the opposition political party known as the "Rally of the People of Guinea" (RPG).  The IJ found Bah's testimony not credible and denied his application; the BIA summarily affirmed.  Bah argues that the IJ's credibility finding is not supported by substantial evidence and that the IJ improperly discredited his testimony by focusing on his illegal entry into the United States.  We deny his petition.

---

[*] After an examination of the briefs and the record, we have concluded that oral argument is unnecessary.  Thus, the appeal is submitted on the briefs and the record. *See* Fed. R. App. P. 34(a)(2).

Bah claimed that he joined the RPG in 1994 in the capacity as "group leader." In 1998 he claimed that he was persecuted when he was arrested for protesting the government's destruction of certain houses. His details are vague, but he described the houses as "sort of owned by the opposition," which presumably includes opposition parties such as the RPG. Bah was not one of the homeowners whose house was threatened. He testified that government officials held him accountable for the protest because he was a known member of the RPG, and the RPG was "helping the people actually save those houses." During his six months in detention, he claimed that he was "beaten" and "wasn't given food," but apparently his family was permitted to bring him meals.

In 2000, two years after his release, he testified that he was arrested again, this time for demonstrating against the majority party (Party for Unity and Progress)—which he believed had rigged the outcome of a local election—and was charged with "encouraging youths to protest against the government, destruction of state property, and trying to create ethnicity." He was held for a year without a trial and testified that during this period he was "tied up. They would beat me up. The party would just tie me up and leave me there as tied, and I would just sleep overnight like that." Bah was finally released after his employer and family bribed the officials who were holding him.

After his release from prison in July 2001, Bah testified, his brother gave him a false Zambian passport and visa with his picture but bearing a false name. According to Bah, his brother also bribed someone at the airport to help facilitate his departure from Guinea. Bah added that it was important for him to leave Guinea shortly after being released from prison because, if he stayed, his family was "afraid that [he] would be killed." He did not testify about his own fear of remaining in Guinea, but he noted in his asylum application that his life was in danger there.

The IJ denied Bah's petition for asylum, finding his testimony incredible. The IJ did not believe that Bah was a political leader because he could not adequately describe his duties as a "group leader" for the RPG. Nor did the IJ credit Bah's testimony that he was ever imprisoned; Bah did not testify that he owned a house the government sought to destroy, did not contend that the RPG were "active participants in the demonstration" against the government's razing of homes, and did not corroborate his claims that he participated in the demonstrations against the 2000 elections. The IJ also pointed out discrepancies between Bah's testimony at the hearing about the harm he suffered in prison in 2001 and the account he set forth in his asylum application. Lastly, the IJ discredited Bah's overall testimony in part based on his use of a false passport to enter the United States.

On appeal, Bah reasserts that his prior arrests and detentions constitute past persecution and that his claims are supported by "corroborative evidence, country background and the testimony." Bah argues that substantial evidence does not support the IJ's adverse credibility determination because the IJ improperly focused on his unlawful entry into the United States rather than his testimony about past persecution.

An asylum applicant has the burden of establishing eligibility by credibly showing that he suffered past persecution or has a well-founded fear of future persecution. 8 C.F.R. § 1208.13(b); *Brucaj v. Ashcroft*, 381 F.3d 602, 606-07 (7th Cir. 2004). If the IJ finds that the applicant has not met his burden, we must uphold the finding as long as it is supported by reasonable, substantial, and probative evidence. *Balogun v. Ashcroft*, 374 F.3d 492, 498 (7th Cir. 2004). Credibility determinations are questions of fact that we may overturn only under extraordinary circumstances, specifically, when the determination is not supported by "specific, cogent reasons" bearing a "legitimate nexus to the finding." *Id.* (internal quotes not included).

Here, the IJ adequately supported his adverse credibility determination with specific and cogent reasons. Specifically, the IJ questioned Bah's claim of being a "group leader" for the RPG who was persecuted for his political involvement. The IJ properly found that Bah's testimony was not sufficiently detailed or corroborated to believe that he was an active participant in either the protests in 1998 or the election demonstrations in 2000. All Bah testified to regarding his role as "group leader" was his attendance at some RPG meetings and his counseling of youth to help grow the RPG movement, and this testimony does not sufficiently show a level of involvement with the RPG to establish that Bah was persecuted on account of his political opinion. The IJ also questioned Bah's credibility in light of his using a falsified passport to gain entry into the United States; without more this would not be a proper basis for an adverse credibility determination, *see Kaur v. Ashcroft*, 379 F.3d 876, 889 (9th Cir. 2004), but here the IJ noted this circumstance as one of many factors that undermined Bah's overall trustworthiness.

Lastly, for the first time on appeal, Bah argues that the IJ improperly applied the "substantial evidence" standard in reviewing his asylum application and instead should have applied the "clearly erroneous" standard. But as the government asserts, Bah waived this claim because he did not first present it to the BIA. 8 U.S.C. § 1252(d)(1); *Abdelqadar v. Gonzales*, 413 F.3d 668, 670-71 (7th Cir. 2005).

The petition for review is DENIED.